CHARLES E. TUTTLE, APPELLANT, *v.* THOMAS DENNIS, RESPONDENT, IMPLEADED WITH TRUMAN PARSHALL.

*Lien for service by a stallion — upon a mare and colt in the hands of one purchasing the mare before the filing of a notice of the lien.*

In an action brought to foreclose a lien for twenty-five dollars, which the plaintiff claimed for service of his stallion rendered to the mare of the defendant, it appeared that a written statement had been filed in the proper clerk's office, under the provisions of chapter 458 of the Laws of 1887, as amended by chapter 457 of the Laws of 1888, and that a certificate or license had been issued by the county clerk to the owner of the stallion, and that a notice of lien had been filed and recorded, as required by section 3 of said act, in the clerk's office, before the expiration of six months from the date of service; but that the mare had been purchased by the defendant in the action after such service, and before any notice of lien was filed.

*Held,* that a lien was created, *in præsenti,* from the time of service, which could only be defeated by the failure of the owner of the stallion to file a notice of the lien within the time prescribed by the statute.

APPEAL by the plaintiff Charles E. Tuttle from a judgment of the Ontario County Court, entered in the clerk's office of the county of Ontario on the 7th day of May, 1890, in favor of the defendant and against the plaintiff, for forty dollars and twenty-eight cents, reversing the judgment of a justice of the peace in favor of the plaintiff.

The action was brought to foreclose a lien, upon a mare and colt, by the plaintiff, as the owner of a stallion, under the provisions of chapter 458 of the Laws of 1887, as amended by chapter 457 of the Laws of 1888.

The lien claimed was for twenty-five dollars for service by the stallion, and the proceedings were instituted before a justice of the peace. Both defendants appeared, but the defendant Thomas Dennis alone answered the complaint. The justice, on the 18th day of December, 1889, rendered judgment establishing the plaintiff's lien upon the mare and colt in question, which judgment was reversed by the County Court.

*E. W. Gardner,* for the appellant.

*Charles H. Paddock,* for the respondent.

MACOMBER, J. :

This action was begun before a justice of the peace to foreclose a lien of twenty-five dollars, which the plaintiff claimed for services of his stallion rendered to the mare of the defendant Parshall. The price agreed upon with the defendant Parshall, who then owned the mare, was twenty-five dollars to insure. The defendant Dennis bought the mare after such service and before any notice of lien was filed.

The judgment of the justice of the peace was as follows : " I find from the evidence that the plaintiff has a lien on the mare and colt in the sum of twenty-five dollars, and that he is entitled to foreclose his lien and sell said property. Wherefore I did, on December 18, 1889, render judgment in favor of the plaintiff and against the defendant for $25 damages and $6.78 costs."

This action was brought in pursuance of the provisions of chapter 458 of the Laws of 1887, as amended by chapter 457 of the Laws of 1888, entitled " An act to prevent deception and fraud by owner or owners, or agent, who may have control of any stallion kept for service, by proclaiming or publishing fraudulent or false pedigrees, and to protect such owner or owners or agents in the collection of fees for the services of such stallions."

By section 1 of this act provision is made for filing with the clerk of the county a written statement giving the name, age and pedigree, if known, the description and terms and conditions upon which the stallion will serve. Upon filing such statement the county clerk is required to issue a certificate or license to the owner that such statement has been filed in his office, which statement and certificate shall be posted in a conspicuous place in each locality in which the stallion shall be kept for service. Section 2 provides a penalty for publishing a false pedigree of the horse. Section 3 is as follows : " Whenever the owner or agent of any stallion shall have complied with the foregoing provisions of this act, the services of such stallion shall become a lien on each mare served, together with the foal of such mare from such service, in an amount agreed upon between the parties at the time of service, or if no agreement was entered into then in such amount as specified in the statement of the owner or agent filed with the county clerk, provided a notice of lien shall be filed, within one year after such service, in the same manner and

place as chattel mortgages are now required by law to be filed. The notice of lien so filed shall be in writing, specifying against whom the claim is, the amount of the same, together with a full description of the property upon which the lien is held. Such lien shall terminate at the end of one year from the date of filing notice thereof, unless within that time an action shall be commenced for the enforcement thereof."

The amendment made by chapter 457 of the Laws of 1888 extended the time for filing the notice of lien from six months, as was provided in the act of 1887, to one year from the time of service. No question is made but that the plaintiff conformed strictly to the requirements of this act relating to the duties of the owner of stallions. A proper certificate was issued to him by the county clerk and the same was duly posted. A notice of lien, as required by section 3, was filed in the clerk's office on December 8, 1888, before the expiration of six months allowed by the statute of 1887, from the time of service, and the same was duly filed and recorded.

The learned county judge reversed the judgment of the justice of the peace upon the ground that the defendant Dennis, having purchased the mare before notice of lien had been filed, took her and her subsequent foal discharged of any lien in favor of the plaintiff by this statute. That proposition presents the only meritorious question in the case.

This act, manifestly, was passed in the interest of the improvement in the breed of horses through systematic and judicious breeding, and for the protection and encouragement of the owners of stallions with ancient pedigrees against persons fraudulently seeking service without pay. Very little reflected light is thrown upon its interpretation from the mechanics' lien laws of the State; yet, in so far as such laws may be resorted to for its elucidation, the same corroborate the contention made in behalf of the plaintiff, namely, that it is not necessary to charge the purchaser of the mare with notice of the service in order to enable the owner of the stallion to enforce this statutory lien. The mechanics' lien law of 1875, chapter 233, provided that any person who should thereafter perform any labor in erecting, altering or repairing any house, building, etc., with the consent of the owner, being such owner as is in this section hereinafter described, should, on filing with the

county clerk of the county in which the property is situated, the notice prescribed by the fourth section of this act, have a lien for the value of such labor and materials upon such house, etc., to the extent of the right, title and interest of the owner of the property, existing at the time of filing said notice. Section 4 of that act provided that no lien should attach to said land, buildings or appurtenances unless such notice was filed by the clerk; and such notice when so filed thereafter only operated as an incumbrance upon said property. By the lien law applicable to the city of New York, chapter 379 of the Laws of 1875, it was expressly provided that no lien should attach until the filing of the claim. So, also, of the lien law given to livery stable keepers and others (chapter 498 of the Laws of 1872), where the lien was expressly declared to take effect only from the time of giving the notice thereof, and while the property was in the hands of the keeper, etc. Under these laws, and, as we understand it, under all mechanics lien laws, no lien can be created until notice thereof is actually filed.

In the act before us for construction, certain duties are required of the owner of a stallion as a condition precedent to any right of lien. He is required to file a statement of the pedigree of his horse, and if the same is untrue, no recovery can be had for service. There is nothing analogous to this requirement in the mechanics' lien laws. The purpose of the statute seems to be, that when the owner has fully and fairly disclosed the pedigree of his stallion, and has filed the same with the clerk of the county, and has received and posted the same together with the clerk's certificate, he shall not be cheated or deprived of the value of the service. The statute makes it a condition precedent to the lien that the statement of such pedigree shall be filed and posted. It is absolute in its terms, that in such an event the owner shall have a lien. Its language is: "Whenever the owner or agent of any stallion shall have complied with the foregoing provisions of this act, the service of such stallion shall become a lien on each mare served, together with the foal of such mare, from such services," etc. Here a lien was created in præsenti from the time of service. There was provided but one way of defeating it, and that consisted in the failure of the owner of the stallion to file a notice of lien within the time prescribed by the statute. The lien existed from the time of service, but it was liable to

become inoperative and defeated by a failure to file the notice, and in no other event. This, manifestly, was the purpose of the statute. In the usual course of service, where, as in this case, the contract was to insure, it could not reasonably be expected that the owner would, immediately after the service, file a notice of lien. Such act was not required in order to secure him.

A very significant circumstance in determining the intent of the legislature in this respect is the fact that, in the act of 1887, the time for filing the notice of lien was limited to six months, but experience showed that in many, perhaps in a majority of cases, it was not absolutely determinable whether the mare was in foal at the end of six months from the service, and hence the time was extended to one year for the filing of the notice, a period in which it would be absolutely known whether or not the contract to insure had been fulfilled. Under this act we are of the opinion that the purchaser of the mare takes the property, subject to the lien which may then exist upon her and her foal.

The judgment of the justice of the peace, though not artistically prepared, is, in substance, in accordance with sections 1737 and 1740 of the Code of Civil Procedure. Even if it were otherwise, it was the duty of the County Court, under section 3063 of that Code to render the proper judgment according to the justice of the case, without regard to technical errors or defects which did not affect the merits of the case.

We are not unmindful that there is a further question in the case relating to notice to the defendant Dennis, before purchasing the mare, of the actual services rendered by the plaintiff's stallion; but we prefer to rest our judgment upon the main proposition as contained above, namely, that the lien for the service of a stallion under this statute attaches from the time of service, provided the same is followed by the filing of the notice of such lien within the time prescribed.

The judgment of the County Court should be reversed and that of the justice affirmed, with costs.